UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LISA CASH F/K/A LISA PRZYBYLSKI, MOTHER AND NEXT FRIEND OF W.P., A MINOR, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:15-cv-00518-JAW |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT FROM OFFERING EXPERTS ON THE SAME ISSUES**

Defendant, the United States of America, through undersigned counsel, hereby opposes

Plaintiff's Motion in Limine to Preclude Defendant from Offering Experts on the Same Issue

(ECF No. 20) as untimely and as contrary to the Federal Rules of Civil Procedure, the Federal

Rules of Evidence, and federal case law.

### *Introduction and Background*

Plaintiff has sued the United States via the Federal Tort Claims Act, 28 U.S.C. § 2671, *et*

*seq.*, alleging that Physician's Assistant Evelyn Dempsey, at the Bangor Walk-in Clinic of

Penobscot Community Health Care ("PCHC"),[1] committed medical malpractice in failing to

diagnose Plaintiff's child's acute lymphoblastic leukemia ("ALL") during a walk-in clinic visit

on February 21, 2014. *See* Complaint (ECF No. 1), ¶¶ 11-17, 23.  Plaintiff claims that PA

Dempsey's allegedly delayed diagnosis caused her daughter, W.P., to become paralyzed nine

---

[1] PCHC is a federally-supported health care provider under Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), 42 U.S.C. § 233(g)–(n).

days later, on March 2, 2014, due to a tumor, allegedly related to W.P.'s ALL, on her spine. Complaint, ¶¶ 22-23.

Plaintiff has designated four specially-retained testifying experts, a pediatrician, a pediatric-oncologist, a vocational rehabilitation consultant, and a damages expert. Defendant has designated six specially-retained testifying experts, a pediatrician, a family practitioner, a pediatric oncologist, a life care planner, a physiatrist (whose testimony is in support of Defendant's life care plan) and a damages expert. The specific experts at issue in Plaintiff's Motion in Limine are the following: 1) Dr. Wendy Ann Chabot, a pediatrician who will offer opinions relating to standard of care, with regard to both to PA Dempsey and to W.P.'s pediatrician, who saw W.P. three days after PA Dempsey, on February 24, 2014; 2) Dr. James Jarvis, the director of a family medicine practice, who will offer opinions relating to standard of care with regard to PA Dempsey, as well as PA Dempsey's reasonable expectations regarding follow-up treatment by W.P.'s pediatrician; and 3) Dr. Debra Friedman, a pediatric oncologist, who will offer opinions on causation, as well as opinions refuting certain conjectural opinions offered by Plaintiff's pediatric oncologist, along with testimony regarding her experience in the diagnosis and treatment of children with ALL. Defendant served Plaintiff with its expert designation on August 17, 2016, based on the understanding that Plaintiff intended to depose all of Defendant's experts, as the parties' had discussed deposition scheduling prior to the service of Defendant's designation.

Relying on Federal Rules of Evidence 403 and 702, Plaintiff takes issue with Defendant's designation of Dr. Jarvis, Dr. Chabot and Dr. Friedman, objecting to what she claims is cumulative testimony, despite the fact that only Dr. Friedman, the pediatric oncologist, has been

deposed.[2] Relying solely on Defendant's expert designation, Plaintiff claims that "Defendant has designated three experts who give exactly the same opinions on exactly the same issues" and that "[s]ave for a few paragraphs about causation in Dr. Friedman's designation, all of the experts Defendant has proffered have the same opinions." Motion in Limine, p. 2, 3. Plaintiff seeks the creative and extreme relief of an order from the Court that "Defendant refine its designation and limit each expert to separate and discreet (sic) issues," and that "Defendant [] choose one expert per issue and revise its Expert Designation or, in the alternative, [] strike the duplicative sections of Defendant's designations." Motion in Limine, pp. 4, 5. Defendant's Motion in Limine, and the extraordinary and harsh relief it seeks, evidences a misunderstanding of the Federal Rules of Evidence, is groundless, premature and contrary to prevailing law, and should be denied.

***Argument***

## I.    FEDERAL RULES OF EVIDENCE 403 AND 702 ARE INAPPLICABLE

The only grounds stated for Plaintiff's Motion in Limine are Federal Rules of Evidence 403 and 702.[3] Those are rules of evidence, addressing the <u>admissibility</u> of evidence. For example, Rule 403 is an exception to the general rule of Rule 402 that relevant evidence is admissible, with Rule 403 identifying circumstances in which relevant evidence may be excluded. Similarly, Rule 702 speaks to the admissibility of expert testimony, including a requirement that such testimony "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a). Procedurally, a motion in limine is one "on or at the threshold" of

---

[2] As was made clear in her deposition on September 7, 2016, Defendant's pediatric oncologist is not expressing an opinion on the standard of care as it applied to PA Dempsey, or whether PA Dempsey met that standard of care. Given the undeniably different nature of her testimony from that of Defendant's pediatrician and family practitioner, Defendant does not focus on her.

[3] Plaintiff also references Federal Rule of Civil Procedure 16(c)(2)(D), which merely stands for the unremarkable proposition that one potential matter for discussion at a pretrial conference is to address claims of unnecessary and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702.

3

trial, Black's Law Dictionary 787 (6th ed. 1990). Thus, a motion in limine based on Rules 403 and 702 speaks to the admissibility of certain evidence at trial.

Defendant has been able to find no case law in which a court agreed to limit a parties' expert designation based on a motion in limine resting on Rules 403 or 702. That, of course, stands to reason given that the scope of discovery under Rule 26(b) clearly includes evidence otherwise inadmissible. *See* Federal Rule of Civil Procedure 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.") *See also Herington v. City of Wichita*, 2016 WL 4565768, *4 (D. KS September 1, 2016) ("[I]t is well established that information within the scope of discovery need not be admissible in evidence to be discoverable."); *Vugrin v. Stancorp Financial Group, Inc.*, 2014 WL 11497818, *3 (D. NM. April 25, 2014) (rejecting the defendant's claim that a motion in limine must be decided before and must circumscribe the scope of discovery).[4]

## II.  A MOTION IN LIMINE REGARDING EXPERT TESTIMONY IS PREMATURE

The depositions of Dr. Jarvis and Dr. Chabot have been scheduled for October 6, 2016 and October 18, 2016, respectively. As with every specially-retained testifying expert, those two experts will flesh out their respective opinions under questioning and with their case files open before them and opposing counsel. At that point, the degree to which their opinions in fact do overlap will be known.[5] But even then, the scope of their expected testimony at trial will not be certain – that is the point of the parties' respective pretrial witness lists – and a motion in limine

---

[4]  The United States has uncovered limited instances in which motions in limine were employed to limit the scope of discovery, such as a motion in limine limiting review of an administrative action to the administrative record, *see* U.*S. v. Marine Shale Processors, Inc.*, 1993 WL 316080, *2 (W.D. LA August 6, 1993), but none relying on Rule 403 or 702.

[5] Plaintiff states that "[a] ruling now will avoid the time and expense associated with traveling to and deposing each of these experts," Motion in Limine, p. 4, but given that Dr. Jarvis and Dr. Chabot clearly have been designated, at least in part, on completely separate issues, Plaintiff's protestation that she will not depose those experts if she receives the relief she requests is questionable at best.

4

based on cumulative testimony simply is premature until Defendant specifies the scope of those witnesses' testimony at trial. *See Masello v. Stanley Works, Inc.*, 2001 WL 1402058, *6 (D.N.H. April 13, 2011) (denying defendant's motion in limine to exclude otherwise admissible expert opinion as cumulative due to absence of a clear understanding of the anticipated trial testimony of the experts at issue). In fact, the First Circuit has indicated that a court must engage in a very specific analysis at trial to determine whether expert testimony should be excluded under Rule 403. *See Secretary of Labor v. DeSisto*, 929 F.2d 789, 795-96 (finding that the trial court abused its discretion excluding a testifying expert prior to receiving the parties' witness lists, which precluded a proffer of evidence and thus precluded the trial court from engaging in the necessary Rule 403 balancing). Accordingly, the Court should find that Plaintiff's Motion in Limine is premature as a matter of law.

In fact, the only case referenced by Plaintiff in support of her motion, *Bado-Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D. P.R. 2005), squarely undermines her Motion in Limine, both substantively and with respect to its prematurity. Plaintiff cites *Bado-Santana* as holding that "[t]he only way more than one engineer could testify was if the testimony of each was about different aspects of the design and testing process [of the allegedly defective Ford Explorer at issue]." Motion in Limine, pp. 3-4. But the decision in fact undermines Plaintiff's position on multiple grounds. First, contrary to Plaintiff's claim, the decision is not a First Circuit decision, but rather from the District of Puerto Rico. Second, the court in *Bado-Santana* analyzes the plaintiff's motions in limine regarding cumulative expert testimony based, not on general expert designations, but "on the defendant's streamlined list of witnesses." *Id.* at *106, 107. Third, the court squarely rebuffs the central premise of Plaintiff's claim, holding "[t]he fact that other experts have addressed this matter in their depositions does not make the testimony cumulative if

5

defendant does not present, at trial, the testimony of said experts." *Id.* at *109. In other words, it matters not, when engaged in a cumulativeness analysis under Rule 403, what the expert in issue says at his or her deposition, but rather what that expert is going to say at trial. Thus, Plaintiff's Motion in Limine is premature.

### III. THE TESTIMONY OF DR. JARVIS AND DR. CHABOT, EVEN BASED SOLELY ON DEFENDANT'S EXPERT DESIGNATION, IS NOT CUMULATIVE

Even if the Court had sufficient information regarding the proposed testimony of Dr. Jarvis and Dr. Chabot to engage in a Rule 403 analysis, there are no substantive grounds to find their testimony cumulative. Courts, in applying Rule 403 to exclude some cumulative expert testimony "have not laid down a per se rule that a party can have only a single expert witness offer the same conclusion." *Masello*, 2001 WL 1402058 at *6. More to the point, expert witnesses with different training and fields of practice offer can differing perspectives on the same issue, thereby making their testimony non-cumulative. *See*, *e.g.*, *Abbot Point of Care, Inc. v. Epocal, Inc.*, 868 F.Supp.2d 1310, 1330-33 (N.D. Ala. 2012) (finding that experts with different backgrounds relying on different evidence may testify to the same conclusion without being cumulative).

Here, Dr. Jarvis runs the family practice at Eastern Maine Medical Center, both supervising other family practitioners and practicing family medicine himself. He will testify from that perspective and based on the knowledge and experience he has acquired in that regard as to the propriety of PA Dempsey's treatment of W.P. at the Bangor Walk-in Clinic. Dr. Chabot is a pediatrician, who has practiced generally in small pediatric offices for most of her career. Her perspective as a specialist, focusing on pediatric medicine, is different than that of Dr. Jarvis, and thus her opinion will be rest on a different foundation, even if she shares his opinion

regarding the propriety of PA Dempsey's treatment of W.P. Thus, even if the Court were to rule on Plaintiff's clearly premature Motion in Limine, the testimony of Dr. Jarvis and Dr. Chabot should not be viewed as cumulative. *See Johnson v U.S.*, 780 F.2d 902, 905-06 (11th Cir. 2011) (reversing trial court's decision to exclude testimony of expert reaching same conclusion as other testifying experts but employing a different specialty and relying on a different analysis).

Accordingly, Plaintiff's Motion in Limine is contrary to the language and scope of Rules 403 and 702, as well as the great weight of federal case law.

## IV. PLAINTIFF'S OTHER ARGUMENTS, UNSUPPORTED BY ANY LAW, ARE GROUNDLESS

Beyond her misguided reliance on Federal Rules of Evidence 403 and 702, Plaintiff recites a litany of equitable arguments to support her request to limit Defendant in designating its experts. Again, even assuming that the Court were in a position to circumscribe Defendant's ability to designate its expert witnesses, each of Plaintiff's additional grounds is baseless, irrelevant, or both.

### A. Dr. Jarvis and Dr. Chabot Will Offer Identical Opinions

Plaintiff claims "[t]he designation offered by the Defendant in this case for Doctors Chabot and Jarvis are (sic) identical." Motion in Limine at 4. Factually, that statement is incorrect. The two experts have similar opinions regarding ALL, its diagnosis, and PA Dempsey's treatment of W.P. on February 21, 2014, but reach those conclusions from different perspectives. Plus, their designations also diverge topically, with Dr. Jarvis offering opinions about PA Dempsey's reasonable expectations about the follow-up care W.P. would obtain, and with Dr. Chabot offering opinions about the follow-up care provided by W.P.'s pediatrician. Moreover, as discussed above, given their differing perspectives, similar opinions cannot be viewed as identical and should not be viewed as cumulative.

B.  The Scales Are Tipped toward the United States and its Superior Resources

Plaintiff claims "where a party, like the United States of America, has superior resources to the other, the scales are tipped in favor of the party that can afford more experts." Motion in Limine, p. 4. That simply is wrong. The United States has two more experts than Plaintiff. One is a physiatrist, who works with paralyzed patients and who provides medical support for Defendant's life care plan. The fact that Plaintiff has chosen not to designate such an expert to support her life care plan is a tactical decision that cannot be laid at Defendant's feet. The second additional expert is Dr. Jarvis or Dr. Chabot, depending upon one's perspective. But given that Plaintiff designated a pediatrician to opine on standard of care, Defendant has every right to do the same with Dr. Chabot. Similarly, if Defendant views a family practitioner as having an equally or more relevant perspective on standard of care at a walk-in clinic, including a family practice expert like Dr. Jarvis hardly tips the scales in favor of the deep-pocketed party. The plaintiff has sued the United States for $30,000,000 precisely because the United States is deep-pocketed.[6] Given that the United States has done nothing more than designate a standard of care expert with the same specialty as that of Plaintiff and designated another with a different practice, one cannot accuse Defendant of throwing around its financial weight.

C.  The Fact Finder Will Be Persuaded by the Quantity not Quality of Experts

Plaintiff may be under a misperception of her rights under the FTCA. She claims that Defendant's expert testimony is, *inter alia*, "likely to confuse the jury" and that the fact-finder may be unfairly persuaded by the number of expert opinions rather than the quality of the

---

[6] This also goes to the Court's proportionality analysis under Rule 26(b), should it choose to do so despite Plaintiff's failure to make such a request. There are $30,000,000 at stake here based on Plaintiff's SF-95. Because Plaintiff will need to depose both experts anyway, due to the fact that they will have opinions on different issues, the best Plaintiff can hope to save is about $1,500 of hourly rate. Given what is at stake in this suit, and given the centrality of the opinions of Dr. Jarvis and Dr. Chabot to the key issues in the case, Plaintiff does not have a credible proportionality argument under Rule 26(b).

testimony." Motion in Limine, pp. 3, 4. First, the United States has not waived sovereign immunity to a jury trial under the FTCA. 28 U.S.C. § 2402. This case will be tried before the Court, with the fact-finder being a district court judge with many years of experience in medical malpractice trials. With all due respect to Plaintiff, there is no risk of the Court being persuaded to Defendant's position regarding PA Dempsey's medical care simply because Defendant offers two experts to speak to that issue against Plaintiff's one.

D.  Defendant Gets to Pick and Choose Experts for Trial Based on their Deposition Performance

Plaintiff claims that "the number of experts gives Defendant opportunities to pick and choose those experts who stand up well on cross examination and jettison those who do not." Motion in Limine, p. 4. That is true, as far as it goes, but it is completely irrelevant, for myriad reasons. First, were opposing counsel to make mincemeat out of Dr. Jarvis or Dr. Chabot at his or her deposition, of course it would be within Defendant's rights to choose not to call that witness at trial. But the withdrawn expert's deposition testimony would still be admissible at trial. Similarly, opposing counsel could cross Defendant's remaining expert with the damaging testimony of the withdrawn expert. In fact, it would be more damaging for Defendant to withdraw a depositionally-battered expert than to allow him or her to testify and try to rehabilitate his or her prior testimony, if possible. Moreover, it is not as if Defendant has retained half a dozen experts on the same issue, intending to slough off all but the top performer. It has retained two, for good reasons. Thus, the argument that retaining both Dr. Jarvis and Dr. Chabot is unfair because it allows Defendant to pull one who performs badly should carry no weight.

Furthermore, Federal Rule of Civil Procedure 26(a)(2)(A) clearly envisions that parties will designate more expert witnesses than they call at trial. Rule 26 requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under

Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). Use of the term "may" can mean only that the drafters intended that parties have flexibility in calling all, some, or none of the experts they have retained and disclosed.

    E.   <u>A Ruling Will Allow Plaintiff to Avoid the "Exorbitant" Costs of Deposing Some Experts</u>

Plaintiff claims that travel for and paying the hourly fees for deposing Defendant's experts are exorbitant and could be avoided by the Court giving Plaintiff what she wants. That simply is not true, and nor is it relevant. First, Plaintiff already has deposed Dr. Friedman in Nashville, TN. Second, both Dr. Jarvis and Dr. Chabot are within driving distance of Portland and would require neither flights nor hotel stays, making the cost of their respective depositions relatively reasonable. Third, both Dr. Jarvis and Dr. Chabot will need to be deposed irrespective of whether the Court forces Defendant to truncate their designations because those witnesses have opinions on different issues. Accordingly, were the Court to require some sort of cabining of the scope of Dr. Jarvis or Dr. Chabot's designation, all that Plaintiff would save would be an hour or two of deposition fees, less than $1,500. Fourth, Plaintiff almost certainly is not expending any financial resources to depose Defendant's experts. Opposing counsel, and his successful medical malpractice law firm, almost certainly are fronting those costs. Should this case settle or Plaintiff prevail at trial, those costs will be paid back, and she likely will have no difficulty covering the expert expenses she now seeks to avoid.

***Conclusion***

Plaintiff has neither legal nor equitable grounds for the extraordinary relief she seeks. For the reasons set forth herein, Defendant respectfully requests that the Court deny Plaintiff's Motion in Limine to Preclude Defendant from Offering Experts on the Same Issue.

10

Dated:  September 12, 2016                    Respectfully submitted,


                                             THOMAS E. DELAHANTY II
                                             UNITED STATES ATTORNEY


                                             /s/ John G. Osborn
                                             John G. Osborn
                                             Assistant United States Attorney
                                             U.S. Attorney's Office
                                             100 Middle Street Plaza, East Tower
                                             Portland, ME  04101
                                             (207) 780-3257
                                             john.osborn2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, I electronically filed the foregoing using the CM/ECF system which will send notifications of such filing(s) to the following:

Terry Garmey, Esq.
Christian Foster, Esq.
Terry Garmey and Associates
482 Congress Street, Suite 402
Portland, Maine 04101
tgarmey@garmeylaw.com
cfoster@garmeylaw.com

THOMAS E. DELAHANTY II
UNITED STATES ATTORNEY

/s/ John G. Osborn
John G. Osborn
Chief, Civil Division
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME  04101
(207) 780-3257
john.osborn2@usdoj.gov

12