UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LISA CASH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:15-cv-00518-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OF DECISION
## ON MOTION IN LIMINE REGARDING EXPERT WITNESSES

Plaintiff Lisa Cash, as mother and next friend of W.P., a minor, alleges that the Penobscot Community Health Center,[1] through one of its practitioners, was negligent in its care of W.P. (Am. Compl., ECF No. 4.) The matter is before the Court on Plaintiff's Motion in Limine to Preclude Defendant from Offering Multiple Experts on the Same Issues. (ECF No. 20.) The motion is denied without prejudice to Plaintiff's ability to renew the motion prior to or at trial.

### BACKGROUND

Plaintiff's claim is based on Defendant's alleged failure to diagnose an enlarged spleen secondary to acute leukemia when W.P. presented with a "grotesquely swollen abdomen." (Am. Compl. ¶¶ 14 – 17.) Plaintiff alleges that had Defendant satisfied the standard of care, W.P. would not have suffered a white blood cell clot in her spinal cord, which clot caused paralysis. (*Id.* ¶ 23.)

Defendant designated three experts to address issues related to liability: (1) Wendy Chabot, M.D., a practicing pediatrician; (2) Debra Friedman, M.D., Director of the Pediatric Hematology/Oncology Division of the Vanderbilt University School of Medicine and professor of

---

[1] Penobscot Community Health Center has received a commission from the Department of Health and Human Services under the Public Health Service Act and, consequently, the United States is the appropriate defendant. 42 U.S.C. § 233.

pediatric medicine; and (3) James Jarvis, M.D., Chief of Family Medicine Service and Director of Family Medicine Residency Program at Eastern Maine Medical Center and professor of osteopathic medicine.  Defendant's designation of experts (ECF No. 25-1) reflects that Defendant expects the experts to testify within their respective areas of expertise: Dr. Friedman (hematology/oncology), Dr. Chabot (pediatrics) and Dr. Jarvis (family medicine). Plaintiff contends the expected testimony of Dr. Chabot and Dr. Jarvis is nearly identical, and thus Defendant should be precluded from calling both witnesses to testify at trial.[2]

## A.    Failure to Detect

On Plaintiff's assertion that Defendant failed to detect and diagnose W.P.'s condition, Defendant anticipates Drs. Chabot and Jarvis will testify as follows:

### Dr. Chabot

Dr. Chabot will opine that, even if W.P. had an enlarged liver and/or spleen at the time of the February 21, 2014 appointment, one cannot say that a failure to detect that potentially enlarged liver and/or spleen more likely than not fell below the standard of care.  An enlarged spleen and/or enlarged liver can be difficult to pick up in a pediatric patient, particularly a new patient, even with a proper abdominal examination that meets the applicable standard of care, such as that performed by PA Dempsey.

### Dr. Jarvis

Dr. Jarvis also will opine that, even if W.P. had an enlarged liver and/or spleen at the time of the February 21, 2014 appointment, one cannot say that a failure to detect that potentially enlarged liver and/or spleen more likely than not fell below the standard of care.  An enlarged spleen and/or enlarged liver can be difficult to pick up in a pediatric patient, particularly a new patient, even with a proper abdominal examination that meets the applicable standard of care, such as the examination performed by PA Dempsey.

---

[2] The designation of Dr. Friedman reflects that her testimony will include the opinion that W.P.'s leukemia progressed in a very unusual manner and that had blood testing been ordered by Defendant, the resulting course of treatment would not have prevented W.P.'s blood clot.  Thus, while Dr. Friedman's designation touches on areas that are also addressed in Dr. Chabot's and Dr. Jarvis's designations, her opinion testimony does not raise the same concern presented by the Chabot/Jarvis designations.

**B.     Physical Examination and Medical Record**

As to whether the medical record created by and the physical examination conducted by Defendant satisfied the standard of care, Defendant designated Drs. Chabot and Dr. Jarvis to testify as follows:

**Dr. Chabot**

Dr. Chabot will opine that the medical record created by PA Evelyn Dempsey for W.P.'s February 21, 2014 visit to the Brewer Walk-In Clinic meets the applicable standard of care in its completeness and accuracy.  Dr. Chabot will opine that PA Dempsey's physical examination of W.P., including her abdominal examination, met the standard of care.

**Dr. Jarvis**

Dr. Jarvis will opine that the medical record created by PA Evelyn Dempsey for W.P.'s February 21, 2014 visit to the Brewer Walk-In Clinic meets the applicable standard of care in its completeness and accuracy.  Similarly, PA Dempsey's physical examination of W.P., including her abdominal examination, met the standard of care.

**C.     Testing and Referral**

Defendant offers Drs. Chabot and Jarvis to testify as follows regarding the alleged need for testing and referral:

**Dr. Chabot**

Dr. Chabot will opine that W.P.'s symptoms as described in the medical records did not require imaging, bloodwork, or other testing, or a referral to a specialist, and PA Dempsey's decision not to order imaging, bloodwork, or other testing, or to refer W.P. to a specialist, met the standard of care. That is particularly true given PA Dempsey's instruction to W.P.'s parents that they return if W.P.'s symptoms got worse or if new symptoms arose.

**Dr. Jarvis**

Dr. Jarvis will opine that W.P.'s symptoms as described in the medical records did not require imaging, bloodwork, or other testing, or a referral to a specialist, and PA Dempsey's decision not to order imaging, bloodwork, or other testing, or to refer W.P. to a specialist met the standard of care. That is particularly true given

3

PA Dempsey's instruction to W.P.'s parents that they return if W.P.'s symptoms got worse or if new symptoms arose.

**D.    Difficulty in the Detection and Diagnosis of Condition**

Defendant designated Drs. Chabot and Jarvis to testify that W.P.'s condition (acute lymphoblastic leukemia) was difficult to detect and diagnose:

**Dr. Chabot**

Dr. Chabot will opine that typical early manifestation of acute lymphoblastic leukemia ("ALL') is a growing list of otherwise nonspecific symptoms, not individually indicative of leukemia, which mimic those of minor childhood conditions, such as pallor, fever, infection, bleeding, bone pain, or lymphadenopathy. Only when those symptoms are unexplained and persistent does the standard of care does [sic] require additional testing or referral. As a result, ALL and other childhood malignancies can be difficult to diagnose in the primary care setting and often are diagnosed after multiple visits, despite proper care by the child's physician. Furthermore, because early warning signs of childhood malignancies are non-specific, early detection often is facilitated by first-hand knowledge of the child's past medical and family history, such as that known by a child's long-time pediatrician rather than a practitioner at a walk-in clinic with no personal history of treating the child.

**Dr. Jarvis**

Dr. Jarvis will opine that ALL often manifests itself through a growing list of otherwise nonspecific symptoms, not individually indicative of leukemia and which mimic those of minor childhood conditions, such as pallor, fever, infection, bleeding, bone pain, or lymphadenopathy. Only when those symptoms are unexplained and persistent does the standard of care does [sic] require additional testing or referral. As a result, ALL and other childhood malignancies can be difficult to diagnose in the primary care setting and often are diagnosed after multiple visits, despite proper care by the child's physician. Furthermore, because early warning signs of childhood malignancies are non-specific, early detection often is facilitated by first-hand knowledge of the child's past medical and family history, such as that known by a child's long-time pediatrician rather than a practitioner at a walk-in clinic with no personal history of treating the child.

**E.    Disagreement with Plaintiff's Expert**

The designations also reflect that Drs. Chabot and Jarvis will contest and challenge the opinions offered by Plaintiff's standard of care expert, Dr. Bomze:

**Dr. Chabot**

Dr. Chabot disagrees with Dr. Bomze's opinion that W.P.'s distended abdomen and history of three weeks of 'off and on' constipation, fever and muscle aches and 'wanting to sleep a lot' required a complete full body exam …" PA Dempsey's examination of W.P. was appropriate given the patient's stated history of symptoms. Similarly, Dr. Chabot disagrees with Dr. Bomze's opinion that "[a] practitioner holding herself out as competent to perform such an exam on a pediatric patient has an obligation to detect a swollen spleen and a swollen liver which W.P. much more likely than not had at the time of her presentation to the walk-in clinic." Detecting an enlarged liver and/or spleen via abdominal examination is a subjective exercise, and a proper examination meeting the standard of care may not detect hepatosplenomegaly, a conclusion that it [sic] particularly unavoidable given PA Dempsey's lack of familiarity with W.P. and given that the degree of hepatosplenomegaly, if any, that W.P. had on February 21, 2014, is wholly conjectural. For the same reasons, Dr. Bomze's reiterated opinion that "performing an exam without detecting a swollen spleen or swollen liver [] is below the standard of care" is incorrect.

**Dr. Jarvis**

Dr. Jarvis disagrees with Dr. Bomze's opinion that W.P.'s distended abdomen and history of three weeks of 'off and on' constipation, fever and muscle aches and 'wanting to sleep a lot' required a complete full body exam …" PA Dempsey's examination of W.P. was appropriate given the patient's stated history of symptoms.  Similarly, Dr. Jarvis disagrees with Dr. Bomze's opinion that "[a] practitioner holding herself out as competent to perform such an exam on a pediatric patient has an obligation to detect a swollen spleen and a swollen liver which W.P. much more likely than not had at the time of her presentation to the walk-in clinic." Detecting an enlarged liver and/or spleen via abdominal examination is a subjective exercise, and a proper examination meeting the standard of care may not detect hepatosplenomegaly, a conclusion that it [sic] particularly unavoidable given PA Dempsey's lack of familiarity with W.P. and given that the degree of hepatosplenomegaly, if any, that W.P. had on February 21, 2014, is wholly conjectural.  For the same reasons, Dr. Bomze's reiterated opinion that "performing an exam without detecting a swollen spleen or swollen liver [] is below the standard of care" is incorrect.

**F.    Care by Other Provider**

Defendant designated Drs. Chabot and Jarvis to testify regarding the care provided by

W.P.'s pediatrician:

**Dr. Chabot**

Dr. Chabot will opine that, based on the medical records of W.P.'s February 24, 2014 visit to Dr. Adams, her long-time pediatrician, Dr. Adams fell below the standard of care in failing to conduct an abdominal examination of W.P. given her presentation with abdominal pain and fever. Dr. Chabot also will opine that PA Dempsey, a general practitioner in a walk-in clinic, could not reasonably foresee that W.P.'s pediatrician, Dr. Adams, would not perform an abdominal examination of W.P. on February 24, 2014, particularly given W.P.'s complaint of abdominal pain at that time. Similarly, PA Dempsey could not reasonably foresee that W.P.'s parents, based on their deposition testimony regarding the development of W.P.'s symptoms between February 22, 2014 and February 24, 2014, would not demand an abdominal examination and/or further testing from Dr. Adams or obtain a second opinion from another medical care provider.

**Dr. Jarvis**

Dr. Jarvis will opine that PA Dempsey, a general practitioner in a walk-in clinic, could not reasonably foresee that W.P.'s pediatrician, Dr. Adams, would not perform an abdominal examination of W.P. on February 24, 2014, particularly given W.P.'s complaint of abdominal pain at that time. Similarly, PA Dempsey, could not reasonably foresee that W.P.'s parents, based on their deposition testimony regarding the development of W.P.'s symptoms between February 22, 2014 and February 24, 2014, would not demand an abdominal examination and/or further testing from Dr. Adams or obtain a second opinion from another medical care provider.

#### DISCUSSION

Through her motion, Plaintiff asks the Court to order Defendant "to choose one expert per issue and revise its Expert Designation or … strike the duplicative sections of Defendant's designations." (Motion at 5.)  In support of this request, Plaintiff asserts that cumulative evidence may be excluded pursuant to Fed. R. Civ. P. 403.  Plaintiff thus argues that Defendant should not be permitted multiple experts per issue, and that Plaintiff should not have to incur the costs associated with multiple expert depositions addressed to the same issues.   (Motion at 4.) Defendant contends Plaintiff's concerns relate to the admissibility of evidence at trial, and do not warrant the Court's intervention at this stage of the proceedings. (Opposition at 3 – 5.)  Defendant

more specifically argues that neither the Court's scheduling order, nor the applicable rules mandate a one-expert-per-issue rule, and that the testimony of Dr. Chabot and Dr. Jarvis will not be cumulative because they have different training and areas of practice (pediatrics and family medicine, respectively) and thus will provide the jury with different perspectives on the issues.

"[A] court has discretion to exclude expert testimony, even if admissible under Rule 702, if 'its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Kilmartin*, No. 1:14-cr-00129-JAW, 2016 WL 5724602, at *5 (D. Me. Sept. 30, 2016) (quoting Fed. R. Evid. 403).  Consistent with the Court's ability to exclude cumulative evidence, although no rule mandates that a party identify only one expert for each issue, as a matter of practice, parties are generally limited to calling one expert for each issue.[3]  To proceed otherwise would invite parties to designate multiple expert witnesses for each issue thereby potentially resulting in trials based on an assessment of not only the quality of the respective experts' testimony, but on the quantity of experts testifying on each issue.  Such a practice would undoubtedly result in more protracted litigation with the attendant increase in cost, and would not necessarily be helpful to the factfinder.

One question in a medical negligence case is which medical specialty governs the applicable standard of care.  A case could conceivably present issues in multiple disciplines, which might warrant multiple expert perspectives.  In this case, one question is arguably whether the quality of Defendant's care is governed by a pediatric standard (Dr. Chabot), a family practice standard (Dr. Jarvis), or both.  The scope is often defined by a plaintiff's allegations and the specialty of the health care providers who administered the care.  That is, to prove medical

---

[3] For instance, in Maine state court, the scheduling order has typically limited each party to one expert witness per issue.  While not directly applicable, it is nevertheless instructive.

negligence, a plaintiff must establish the standard of care required of the health care provider under the circumstances.  To assess whether Defendant, based on Plaintiff's claim, Plaintiff's expert evidence, and the specialty of the providers who administered the care to W.P., can reasonably anticipate the need to call experts from multiple disciplines to offer the same or similar opinions, the Court would need a more developed record.  The Court, therefore, will not at this stage of the proceedings require Defendant to choose which expert it will call at trial.[4]  Plaintiff's challenge to the admissibility of evidence based on Federal Rule of Evidence 403 similarly requires greater factual context than is presently before the Court.[5]

## CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion in Limine (ECF No. 20) is denied without prejudice to Plaintiff's ability to renew the motion prior to or at trial.

### NOTICE

Any objections to this Memorandum of Decision shall be filed in accordance with Fed. R. Civ. P. 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 26th day of October, 2016.

---

[4] The Court recognizes that Defendant's designation might cause Plaintiff to take the deposition of both Dr. Chabot and Dr. Jarvis.  If Plaintiff incurs additional discovery-related costs as the result of Defendant's designation of Drs. Chabot and Jarvis, and if the Court ultimately determines that Plaintiff's claim did not generate the need for expert witnesses in multiple disciplines and precludes one of the witnesses from testifying at trial, Plaintiff can move for an order directing Defendant to reimburse Plaintiff for the additional costs.  The Court would assess the merit of any such motion after Defendant had the opportunity to respond to the motion.

[5] Plaintiff also cited Federal Rule of Evidence 702 in support of her motion.  However, the record does not present any concern related to the qualifications of the proposed experts or the soundness of their opinions.